**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ITS Engineered Systems, Inc.,[1] | § | Case No. 15-32145 (KKB) |
| | § | |
| Debtor. | § | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE
PROTECTION (II) AUTHORIZING POST-PETITION FINANCING,
AND (III) GRANTING RELATED RELIEF**

**NOTICE UNDER BLR 9013-1(b) AND 9013-1(i)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED.   IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The last four digits of the Debtor's tax identification number are 6115.

---

ITS Engineered Systems, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**ITS**"), files this "Emergency Motion For Interim And Final Orders (I) Authorizing Use Of Cash Collateral and Granting Adequate Protection (II) Authorizing Post-Petition Financing, and (III) Granting Related Relief" (the "**Motion**"). In support of the Motion, the Debtor respectfully states as follows.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of this proceeding Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

2.      On April 17, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").  The Debtor is continuing to operate its business and manage its financial affairs as debtor-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No trustee, examiner or statutory committee has been requested or appointed in this chapter 11 case.

4.      Pursuant to the terms of the Diverse Credit Facility (as defined below), Debtor has a revolving credit facility with Diverse Energy Systems, LLC ("**Diverse**").  Diverse is the indirect parent company of Debtor.  Due to the ebbs and flows of Debtor's cash flow on a weekly basis, Debtor does not believe that it can conduct its operations solely on the use of the cash collateral of Diverse.  Therefore, to the extent Debtor is in need of funding in excess of available cash collateral, Debtor is requesting approval for interim and final orders approving

debtor-in-possession financing from Diverse.   As funds are collected going forward from Debtor's operations, the debtor-in-possession financing will be paid down and the pre-petition Diverse Credit Facility (as hereinafter defined) will not be reduced absent further order of this Court.

## BACKGROUND

5.      A description of the Debtor's business, capital structure, and the events leading to this chapter 11 case is set forth in the *Declaration of Todd A. Hass in Support of Chapter 11 Petition and First Day Motions* (the "**Hass Declaration**") and is incorporated herein by reference.

6.      Debtor conducts its primary operations in Waller County, Texas.   Debtor is a Delaware corporation and is in the business of manufacturing oil field service and steam generation systems for upstream and downstream markets.   Debtor employs approximately 69 people in Waller County, Texas.   Debtor is an indirect subsidiary of Diverse, which purchased the stock of Acquisition Finance Group, Inc. ("**AFG**"), a Delaware corporation, on September 1, 2013.   AFG is the parent company of Debtor.

7.      During calendar year 2014, Debtor had gross revenues of approximately $15,859,312.00.   In the normal course of business, Debtor purchases component parts from Diverse and third party vendors and incorporates such component parts into finished products. Upon completion, Debtor sells the majority of its finished products to Diverse at a profit.   Debtor also sells some finished products to Debtor's third party customers.   Due to tight liquidity, which has restricted Debtor's ability to acquire product, Debtor's gross revenues have declined significantly to date in the year 2015.   However, Debtor fully expects this to change rapidly.

Diverse is diligently seeking to obtain equity funding from third parties to invest significant sums into the Debtor, and Diverse believes a significant equity infusion will occur.

8.      Debtor's primary operating account is at Icon Bank (Account No. ##422) (the "**Operating Account**").  As of the Petition Date, Debtor held a separate operating account at Enterprise Bank (Account No. ##096) which will be closed shortly by the Debtor and the funds transferred to Debtor's operating account at Icon Bank.  As of the Petition Date, the Enterprise Bank account held approximately $2,200.00.

9.      When one of Debtor's third-party customers pay an invoice, such payments are made to the Debtor Operating Account.  When Debtor sells product in the ordinary course of business to Diverse, Diverse and Debtor keep an accounting of the sales price which is incorporated into the amounts owing under the Diverse Credit Facility.

10.      In the ordinary course of business, through the Diverse Credit Facility, as Debtor needs cash to pay operating expenses, Debtor writes a check on its Operating Account to pay invoices and expenses.  When such checks are presented for payment at Icon Bank, funds are automatically drawn from a Diverse bank account at Icon Bank into the Debtor Operating Account to pay such checks and the indebtedness owing under the Diverse Credit Facility (as hereinafter defined) increases.  For all practical purposes, the ITS Operating Account maintains a zero balance.  As is reflected in the Motion to Continue Using Cash Management System filed contemporaneously herewith, the Debtor thus desires to continue to maintain and use its cash management system and Operating Account in the ordinary course of business, consistent with its past practices.

11.     Pursuant to the terms of a certain Promissory Note dated September 1, 2013, Debtor borrowed, on a revolving basis, up to the sum of $3,000,000.00 from Diverse as may be advanced.  In conjunction with such borrowing, Debtor executed a certain Security Agreement dated September 1, 2013 granting Diverse a security interest in substantially all of Debtor's assets.  Diverse filed a UCC financing statement with the Texas Secretary of State on September 12, 2013 (collectively the "**Diverse Credit Facility**").  As of the Petition Date, Diverse asserts that the amount owing under the Diverse Credit Facility is the sum of approximately $2.0 million.

12.     Through the Diverse Credit Facility, Debtor and Diverse have many transactions by and between them including but not limited to Debtor purchasing component parts from Diverse, Debtor selling finished manufacturing products to Diverse, Diverse loaning money under the Diverse Credit Facility to fund Debtor's normal operating expenses including payroll, inventory purchases, and payments to creditors.  Personnel of Diverse also perform certain management and other services for Debtor that are required for the continuation of Debtor's operations including, but not limited to, the following:

> Accounting, human resources, executive, information technology, in-house legal, manufacturing G&A, supply chain services, engineering services and safety (collectively the "**Management Services**").

13.     These services are performed by approximately twenty-five (25) Diverse employees.  The salary and related payroll expenses are allocated on a monthly basis by Diverse between Diverse, Debtor and other Diverse related entities based upon the approximate amount of time spent by each such personnel performing the Management Services on Debtor's business versus the business of Diverse or other Diverse related entities.  The allocation to Debtor

includes no cost mark-up to the actual salary and related payroll expenses incurred by Diverse. From April 1, 2014 through March 2015, the percentage of the total cost for such personnel allocated to ITS has ranged from 45.9% to 52.4%. If anything, such personnel performed more services for the benefit of ITS than the actual allocation per the management fee to ITS. In other words, ITS benefits from this activity.

14. In order to avoid the administrative burden to allocate between pre and post-petition periods for the month of April, 2015, Diverse has agreed to not charge any of the fee for the Management Services to Debtor on a pre or post-petition basis for the services rendered during the month of April 2015 only. However, commencing May 1, 2015, Diverse requests authority to charge Debtor for such fees for Management Services in the normal course of business to be allocated to Debtor under the Diverse Credit Facility during the week of June 1, 2015 and in the first week of each month thereafter (in other words, in arrears). For the period of April, 2014 through March, 2015, the fee for the Management Services allocated to Debtor ranged from a low of $71,526.10 to a high of $96,544.75 per month.

15. Debtor does not have the personnel or expertise to perform all of these Management Services performed by Diverse. The fees for the Management Services are added to the unpaid indebtedness on the Diverse Credit Facility. The fee for the Management Services is fair and reasonable and in the best interest of Debtor and Debtor's estate. Debtor would be required to spend more money to acquire sufficient third parties to perform all of these necessary services if Debtor is not allowed to use the services of Diverse's personnel, including the Management Services.

16.     Debtor keeps a detailed breakdown of the amounts owing under the Diverse Credit Facility.  By its nature, the unpaid balance of the Diverse Credit Facility changes almost on a daily basis.

## RELIEF REQUESTED

**(a)     Cash Collateral Usage**

17.     Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if (i) those having an interest in such cash collateral consent, or (ii) the Court authorizes use of cash collateral. 11 U.S.C §363(c)(2). Even with consent, Rule 4001 functionally requires there be an order approving the parties' agreement to use of cash collateral, accordingly, the Debtor requests authority to use cash collateral.  Diverse asserts that the cash proceeds of its asserted collateral of whatever kind or nature, including currency, drafts, electronic fund transfers and debits, checks, drafts and other cash-equivalents constitute its "**Cash Collateral.**"

18.     Under Rule 4001(b)(2), a final hearing on a motion for authorization to use cash collateral can be commenced no earlier than 15 days after service of the motion, but the Court may conduct a preliminary hearing before the 15-day period expires. In such a situation, the Court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

19.     Payment of the expenses identified on the budget attached as Exhibit "1" to Exhibit "A" for approximately the next three (3) weeks is necessary to avoid immediate and irreparable harm to the estate pending opportunity for a final hearing herein. The limited interim use of Cash Collateral to pay these expenses is vital to maintaining the value of the Debtor's assets.

20.     Ultimately, the use of Cash Collateral on a final basis will maintain the going concern value of the Debtor's business and improve the ability of the Debtor to facilitate a timely reorganization. The Debtor will be able to keep its property insured and maintained, pay necessary operating expenses, including paying is employees so that they can continue their jobs of operating the Debtor's business and generating income for all creditors and parties-in-interest. These are all expenses necessary to preserve the value of the Debtor's property. Without such minimal financial accommodations, the Debtor's business will be forced to close.

### (b)     Offer of Adequate Protection for Use of Cash Collateral

21.     Use of cash collateral may be prohibited or conditioned, however, upon request by a party having an interest in such cash collateral as is necessary to adequately protect its interest. 11 U.S.C. §363(c)(3). However, the Court may authorize the use of cash collateral upon a showing that those with an interest in the cash collateral are adequately protected.  11 U.S.C. §§ 363(c)(2)(B) and 363(e).   Adequate protection requires consideration of the creditor's aggregate collateral position, not simply protection of its lien on cash or accounts.

22.     In consideration for the use of Cash Collateral, and as adequate protection for any diminution of Diverse's interest in the pre-petition and post-petition collateral to which its asserted liens attach, to the extent Diverse holds valid, perfected and unavoidable security interests in property of the Debtor's estate, without any requirement to file any additional documents to perfect such interests, the Debtor hereby tenders adequate protection in the form of a post-petition security interest upon all post-petition property of the same kind and type that is subject to Diverse's properly perfected pre-petition security interests ("**Replacement Lien**"). The Replacement Lien shall extend to: (a) all property ("**Replacement Collateral**") acquired by

the Debtor, and its bankruptcy estate, of the kind or type that would otherwise constitute Diverse's pre-petition collateral and (b) all products and proceeds of the Replacement Collateral and the pre-petition collateral, of the kind or type that would otherwise constitute Diverse's pre-petition collateral. The Replacement Lien granted hereby shall not extend to causes of action under Chapter 5 of the Bankruptcy Code and shall be limited to the decline, if any, in the value of Diverse's collateral by virtue of the Debtor's post-petition use of Cash Collateral. The Replacement Lien is without prejudice to any right, claim, or objection of the Debtor or any other party regarding the extent, priority and validity of any lien or security interest securing the indebtedness of any allegedly secured creditor, including Diverse. The Replacement Lien in any kind of property shall have the same validity and priority as Diverse's liens and/or security interests had in that kind of property prior to the Petition Date, if any.

23.     Given that Diverse consents to the relief granted herein and its interests are adequately protected, it is in the best interests of the Debtor and the Debtor's bankruptcy estate that its operations continue and that the Debtor be authorized to utilize Cash Collateral pursuant to the terms provided herein. Accordingly, the Debtor requests that they be authorized to use Cash Collateral for the purpose of paying necessary business expenses pursuant to section 363 of the Bankruptcy Code, and that the Court grant Diverse Replacement Liens on post-petition assets as described herein, and that such relief be granted on an interim basis to avoid immediate and irreparable injury to the Debtor and its estate.

24.     Debtor requests that the Court enter the interim order attached hereto as Exhibit "A" on an emergency basis and enter the proposed final order attached hereto as Exhibit "B" after notice and opportunity for a hearing.

**(c)**     **DIP Credit Facility**

25.     As set forth above, due to the ebbs and flows of Debtor's weekly cash flow, Debtor does not believe that it can continue its normal business operations solely on the use of Cash Collateral.  Diverse has agreed to provide debtor-in-possession financing (the "**DIP Credit Facility**") upon the terms set forth below to the extent debtor-in-possession financing becomes necessary due to a temporary cash flow shortage of Debtor in operations. The terms of the proposed DIP Credit Facility are as follows:

a.     The gross unpaid balance of the DIP Credit Facility and the prepetition Diverse Credit Facility shall not exceed the sum of $3 million.

b.     Debtor may borrow on the DIP Credit Facility to pay operating expenses and other administrative expenses of this estate.

c.     The DIP Credit Facility shall accrue interest at the rate of 7.5% per annum on the unpaid balance.

d.     As funds are collected by Debtor from operations, such funds shall be used to pay down the DIP Credit Facility.  The DIP Credit Facility shall be a revolving line of credit.  The Diverse Credit Facility shall not be rolled-up into the DIP Credit Facility.

e.     The DIP Credit Facility shall be secured by a junior lien, without any requirement to file any additional documents to perfect such interest, upon the Replacement Collateral.

f.     The DIP Credit Facility shall be due and payable in full upon the earlier of (a) January 31, 2016; (b) the conversion of Debtor's bankruptcy case to a chapter 7 or dismissal of Debtor's bankruptcy case; (c) the appointment of a chapter 11 trustee in Debtor's bankruptcy case; and (e) the entry of an order confirming a plan of reorganization in Debtor's bankruptcy case.

g.     The DIP Credit Facility shall be binding on any subsequently appointed chapter 7 trustee.

26.     Debtor is seeking approval of the DIP Credit Facility pursuant to 11 U.S.C. § 364(c)(3).  Specifically, Debtor is proposing to only grant Diverse a junior lien on Diverse's prepetition collateral as part of the DIP Credit Facility.

27.     Thus, pursuant to Bankruptcy Code § 364(c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit, and the proposed borrowing is in the best interests of its estate. *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Production Co*., 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); *see also* 3 COLLIER ON BANKRUPTCY ¶ 364.03, at 364-7-18 (15th ed. rev.).

28.     The statutory requirement for obtaining postpetition credit under Bankruptcy Code § 364(c) is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense."

29.     Courts have articulated a three-part test to determine whether a debtor may obtain financing under Bankruptcy Code § 364(c):

     a.     the debtor is unable to obtain unsecured credit solely under Bankruptcy Code § 364(b) (i.e., by granting a lender administrative expense priority);

     b.     the credit transaction is necessary to preserve the assets of the estate; and

     c.     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991).

30.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Bankruptcy Code § 364(c).  When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc*., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc*., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40.

31.     The Debtor believes that the terms and conditions outlined in the DIP Credit Facility are reasonable and justified under the circumstances, in that this facility will enable the Debtor to have sufficient liquidity to continue with its operations and the plan process in a manner that will best serve all parties-in-interest herein. The Court should therefore authorize the Debtor to provide Diverse a junior lien on its pre-petition collateral and the Replacement Collateral for any obligations arising under the DIP Credit Agreement as provided for in Section 364(c)(3) of the Bankruptcy Code.

32.     The proposed DIP Credit Facility provides the Debtor and its estate with the most favorable financing available under the circumstances confronting the Debtor, and the Debtor's decision to enter into the DIP Credit Facility is a sound exercise of business judgment.  Due to the emergency nature of Debtor's bankruptcy filing, Debtor was not able to conduct an exhaustive search of alternative DIP financing sources.  However, due to the financial status of Debtor, the liens already granted to Diverse on substantially all of Debtor's assets, Debtor does not believe that it is reasonable to expect to find alternative post-petition financing on better terms under the circumstances.

33.     It is essential that the Debtor obtain financing necessary to continue, among other things, the orderly operation of the Debtor's business and this case, and to otherwise satisfy its working capital requirements.  As described above, the DIP Credit Facility will allow Debtor to continue operations.  Without immediate access to new borrowing relief, the Debtor's business operations and this case in general could be seriously jeopardized. The new liquidity offered by the proposed DIP Credit Facility would ensure that the Debtor can maintain and ultimately increase the value of its assets and administer this case through the bankruptcy process.  Thus, approval of the DIP Credit Facility is crucial to maximizing the value of the Debtor's estate.

34.     <u>Carve-Out</u>.  Each of the liens and claims of Diverse granted to Diverse in connection with the use of cash collateral and the DIP Credit Facility under this Order, shall be subject to a carve-out (the "**Carve-Out**") for the following: (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930, and (b) the allowed fees and expenses to Debtor's counsel in this bankruptcy case.  Carve-Outs for professional fees have been found to be reasonable and necessary to ensure that Debtor's estate and any statutory committee can obtain appropriate assistance from counsel and other professionals.  *See*, *e.g. Ames Dept. Stores, Inc.*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990).

35.     Debtor respectfully submits that entering into the proposed DIP Credit Facility is a sound exercise of Debtor's business judgment and is in the best interest of Debtor's bankruptcy estate under the circumstances.

## **BUDGET PROCEDURES / OTHER PROVISIONS**

36.     The Debtor will agree that the following will constitute events of default (each an "**Event of Default**"): (i) use or transfer of Cash Collateral in excess of the amounts permitted

under the budget or for purposes not specifically authorized under the budget unless consented to in writing by Diverse (however, a ten percent (10%) global variance will not constitute a default); (ii) entry of an order providing for the conversion of the Debtor's case to a chapter 7 case or for dismissal thereof; (iii) entry of an order providing for the appointment of a chapter 11 trustee in this case; (iv) lapse of adequate loss insurance on the Pre-Petition Collateral, if any is required; or (v) the Debtor's material failure to keep or observe any other provision of any Order related to the use of cash collateral or post-petition financing.

37.    The Debtor agrees that any interim relief granted on the Motion shall be expressly without prejudice to the rights of parties in interest at a final hearing on the Motion.

38.    The Debtor proposes that final authority to use Cash Collateral and to obtain funding from the DIP Credit Facility be authorized in accordance with the following procedures:

(a)    The thirteen (13) week budget to be attached to the proposed Final Order shall constitute Debtor's budget for such thirteen (13) week period ending in July, 2015.

(b)    After entry of a final order authorizing use of Cash Collateral and obtaining the DIP Credit Facility, the Debtor shall file proposed quarterly budgets with the Court and serve same on Diverse, the U.S. Trustee, and counsel for any official committee (and if none has been appointed, to the 20-largest unsecured creditors) by the Court's electronic noticing system, e-mail or U.S. first class mail, within at least five (5) business days prior to the end of the applicable budget cycle (the "**Proposed Quarterly Budget**"). The Proposed Quarterly Budget shall represent the next quarterly period of operations.

(c)    Diverse shall have three (3) business days, from the date the Proposed Quarterly Budget is filed, to review, and if appropriate, file a written objection thereto, and serve same on the Debtor and Debtor's counsel.

(d)    If no objection to the Proposed Quarterly Budget is filed, then the proposed budget shall become the approved Budget for the next quarter.

(e)    If an objection to the Proposed Quarterly Budget is filed, then cash collateral usage and funding under the DIP Credit Facility shall be allowed

in accordance with the limitations in the Budget approved for the prior month until the Court has an opportunity to hear the objection. The Debtor shall not oppose any request for emergency hearing on such objection.

(f)     Nothing in this procedure shall prohibit Diverse, or any other secured party with an interest in Cash Collateral from seeking to require a different budgeting procedure, provided that such secured party files an appropriate motion therefore.

(g)     Each Proposed Quarterly Budget shall set forth separately, any requested "carve out" funding of Debtor's professional fees and expenses in this case, if any, for the applicable quarter. The failure of Diverse, or any other party in interest to object to the amount of such proposed payment shall not constitute a waiver of such party's right to object to the final fee application of such professional on any permissible ground.

## NOTICE

39.     Notice of this Motion has been provided to (a) Diverse through its counsel John Akard, Jr., Coplen & Banks, P.C., 11111 McCracken, Suite A, Cypress, Texas 77429 by electronic transmission; (b) the U.S. Trustee, by electronic transmission and by overnight delivery; (c) the 20 largest unsecured creditors, by over-night delivery; and (d) those persons who have formally appeared and requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, by electronic transmission, facsimile, or U.S. Mail (collectively, the "**Notice Parties**").

40.     The Debtor submits that in view of the relief requested, and the consent of Diverse, such notice is sufficient under Rule 4001 of the Federal Rules of Bankruptcy Procedures and any applicable local rule, under the circumstances, and that no other or further notice need be provided.

41.     The Debtor respectfully requests that the Court set the Motion for an interim hearing on an emergency basis and enter an interim order granting the Debtor's limited use of Cash Collateral and funding under the DIP Credit Facility, pursuant to the terms provided for

herein to avoid immediate and irreparable harm to the Debtor, its estate, and all of its creditors. The Debtor requests that the Court set final use of cash collateral and the DIP Credit Facility for hearing and authorize interim use of Cash Collateral and debtor-in-possession financing through such date, at which time the Debtor would request final authority on a go-forward basis throughout the pendency of these cases, pursuant to the terms provided herein, subject to modification or termination by further order of the Court, or upon a finding, after notice and a hearing, that Diverse or any other secured creditors' interests are no longer adequately protected.

42.     Debtor requests an emergency hearing on this motion for Tuesday, April 21, 2015, but no later than Wednesday morning, April 22, 2015.  Debtor must fund payroll on April 22nd.

**WHEREFORE**, the Debtor requests that the Court enter an order authorizing the Debtor to use Cash Collateral and obtain debtor-in-possession financing on an interim and final basis as requested herein and for such other further or relief as is just and equitable.

Respectfully submitted this 20th day of April, 2015.

**GRAY REED & MCGRAW, P.C.**

*/s/ Micheal W. Bishop*

Micheal W. Bishop
Texas Bar No. 02354860
Lydia R. Webb
Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email: mbishop@grayreed.com
          lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the *Debtor's Emergency Motion For Interim And Final Orders (I) Authorizing Use Of Cash Collateral and Granting Adequate Protection (II) Authorizing Post-Petition Financing, and (III) Granting Related Relief* has been electronically filed in the case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system, a copy was served on the parties who receive notice via the Court's ECF notification system and a copy was also forwarded via overnight delivery to each of the parties set forth on the service list attached as **<u>Exhibit C</u>** on this the 20th day of April, 2015.

*/s/ Micheal W. Bishop*

Micheal W. Bishop

# **EXHIBIT A**

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ITS Engineered Systems, Inc.,[1] | § | Case No. 15-32145 (KKB) |
| | § | |
| Debtor. | § | |

**INTERIM ORDER (I) AUTHORIZING USE OF**
**CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION,**
**AND (II) AUTHORIZING POST-PETITION FINANCING**

Upon consideration of the interim portion of the Emergency Motion For Interim And Final Orders (I) Authorizing Use Of Cash Collateral and Granting Adequate Protection (II) Authorizing Post-Petition Financing, and (III) Granting Related Relief (the "**Motion**") filed by ITS Engineered Systems, Inc., (the "**Debtor**"), debtor and debtor-in-possession in the above-captioned Chapter 11 proceeding. The Motion seeks entry of an Interim Order authorizing the Debtor to utilize asserted cash collateral of Diverse Energy Systems, LLC ("**Diverse**") and to obtain debtor-in-possession financing from Diverse for operations necessary to prevent immediate and irreparable harm.

The Court having preliminarily considered the aspects of the Motion and the exhibits attached thereto, on an interim basis, and in accordance with Bankruptcy Rules 4001(b)(2) and (b)(3), and (c) due, proper and adequate notice of the Motion appropriate to the circumstances presented, having been given; and an interim hearing to consider approval of the Motion having been held on April 21, 2015; the arguments of counsel, the testimony proffered and other evidence presented at the hearing on the Motion; and after due deliberation and consideration and good and sufficient cause appearing therefore,

---

[1] The last four digits of the Debtor's tax identification number are 6115.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A.     On April 17, 2015, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Petition Date**"). The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in this case.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicates for the relief granted herein are sections 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c).  Venue of this Chapter 11 proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Diverse through certain purported loan documents asserts a lien and security interest on substantially all of Debtor's assets (the "**Diverse Credit Facility**").  Diverse asserts that the cash proceeds of its asserted collateral of whatever kind or nature, including currency, drafts, electronic fund transfers and debits, checks, drafts and other cash-equivalents constitutes its "**Cash Collateral**."

D.     The Cash Collateral provides the general working capital for the Debtor's operations.  Diverse has consented to Debtor's use of Cash Collateral.

E.     The Debtor's business requires access to Cash Collateral inasmuch as the Debtor has determined, in its business judgment that it is unable to operate generally without use of Cash Collateral. Without authority to use Cash Collateral, the Debtor will not be able to meet simple operating needs, including payroll, utilities, insurance, and/or otherwise comply with state and local ordinances to maintain and preserve the value of its assets.

F.      Attached hereto as **Exhibit "1"** is a budget setting forth the particular expenses anticipated to be necessary to paid through May 10, 2015 (the "**Interim Budget**").

G.      In consideration for the use of Cash Collateral, and as adequate protection for any diminution of Diverse's interest in the pre-petition and post-petition collateral to which it asserts liens attach, to the extent Diverse holds valid, perfected and unavoidable security interests in property of the Debtor's estate, without any requirement to file any additional documents to perfect such interests, the Debtor has tendered adequate protection in the form of a post-petition security interest upon all post-petition property of the same kind and type that is subject to Diverse's properly perfected pre-petition security interests ("**Replacement Lien**"). The Replacement Lien shall extend to: (a) all property ("**Replacement Collateral**") acquired by the Debtor, and its bankruptcy estate, of the kind or type that would otherwise constitute Diverse's pre-petition collateral and (b) all products and proceeds of the Replacement Collateral and the pre-petition collateral, of the kind or type that would otherwise constitute Diverse's pre- petition collateral. The Replacement Lien granted hereby shall not extend to Chapter 5 causes of action and shall be limited to the decline, if any, in the value of Diverse's collateral by virtue of the Debtor's post-petition use. The Replacement Lien is without prejudice to any right, claim, or objection of the Debtor or any other party regarding the extent, priority and validity of any lien or security interest securing the indebtedness of any allegedly secured creditor. The Replacement Lien in any kind of property shall have the same validity and priority as Diverse's liens and/or security interests had in that kind of property prior to the Petition Date, if any.

H.      Debtor is hereby authorized to enter into the DIP Credit Facility with Diverse on the following terms:

        a.      The gross unpaid balance of the DIP Credit Facility and the prepetition Diverse Credit Facility shall not exceed the sum of $3 million.

b.     Debtor may borrow on the DIP Credit Facility to pay operating expenses and other administrative expenses of this estate.

c.     The DIP Credit Facility shall accrue interest at the rate of 7.5% per annum on the unpaid balance.

d.     As funds are collected by Debtor from operations, such funds shall be used to pay down the DIP Credit Facility.  The DIP Credit Facility shall be a revolving line of credit.  The Diverse Credit Facility shall not be rolled-up into the DIP Credit Facility.

e.     The DIP Credit Facility shall be secured by a junior lien, without any requirement to file any additional documents to perfect such interest, upon the Replacement Collateral.

f.     The DIP Credit Facility shall be due and payable in full upon the earlier of (a) January 31, 2016; (b) the conversion of Debtor's bankruptcy case to a chapter 7 or dismissal of Debtor's bankruptcy case; (c) the appointment of a chapter 11 trustee in Debtor's bankruptcy case; and (e) the entry of an order confirming a plan of reorganization in Debtor's bankruptcy case.

g.     The DIP Credit Facility shall be binding on any subsequently appointed chapter 7 trustee.

I.     In the exercise of Debtor's sound business judgment, Debtor is authorized to enter into the DIP Credit Facility that is necessary to preserve the assets of this bankruptcy estate.  The Court finds that the terms of the transaction are fair, reasonable and adequate, given the circumstances in this case.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.     **Motion Granted On Interim Basis.** The Motion to use Cash Collateral and to enter into the DIP Credit Facility is granted on an interim basis as set forth herein and any objections thereto that have not previously been withdrawn are overruled.

2.     **Authority to Use Available Cash Collateral.** For the purposes of this Interim Cash Collateral Order, the Debtor is immediately authorized to use Cash Collateral generated post-petition in accordance with the Interim Budget attached hereto in connection with the

operation of the Debtor's business and to pay any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code. Nothing herein shall prevent the Debtor from seeking authority to access other sources of Cash Collateral by separate motion if deemed necessary by the Debtor, nor shall anything herein prevent any party from objecting to such access.

3.      **Authority to Enter into the DIP Credit Facility.**  For purposes of this interim order, the Debtor is immediately authorized to enter into the DIP Credit Facility as authorized pursuant to the terms of this Order.

4.      **Events of Default.** The following shall constitute events of default under this Order (each an "**Event of Default**"): (i) use or transfer of Cash Collateral or funds from the DIP Credit Facility in excess of the amounts permitted under the Interim Budget or for purposes not specifically authorized under the Interim Budget (however, a ten percent (10%) line item variance will not constitute a default); (ii) entry of an order providing for the conversion of the Debtor's chapter 11 case to a chapter 7 case or for dismissal thereof; (iii) entry of an order providing for the appointment of a chapter 11 trustee or examiner; (iv) lapse of adequate loss insurance on the Pre-Petition Collateral; or (v) the Debtor's material failure to keep or observe any other provision of an order entered hereon.

5.      **Grant of Adequate Protection.** Diverse shall continue to have liens in the Debtor's post-petition assets to the same extent and priority of their liens prior to the Petition Date. As adequate protection for the use of Cash Collateral and to secure any obligations under the DIP Credit Facility, they are hereby granted, and the indebtedness due to Diverse is hereby deemed to be secured by a Replacement Lien in the Replacement Collateral. The Replacement Lien granted hereby shall not extend to Chapter 5 causes of action and shall be limited to the decline, if any, in the value of Diverse's collateral by virtue of the Debtor's post-petition use.

The Replacement Lien is without prejudice to any right, claim, or objection of the Debtor or any other party regarding the extent, priority and validity of any lien or security interest securing the indebtedness of any allegedly secured creditor.

      6.      **Insurance**. The Debtor shall maintain adequate loss insurance on the Pre-Petition Collateral.

      7.      **Findings of Fact, etc.** This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

      **8.**      **Notice and Hearing. A final hearing on the Motion is scheduled for May \_\_\_, 2015, at \_\_\_\_\_ \_\_.m. (the "Final Hearing") in the Courtroom of the Honorable Karen Brown at the United States Courthouse located 515 Rusk Avenue, Houston, Texas. A copy of this Interim Order and a Notice of Final Hearing will be served by the Debtor on parties entitled to notice thereof including any other secured creditor of the Debtor, the office of the U.S. Trustee, and any party requesting notice, within 48 hours of the entry of this Order. Any objection to the relief requested in Motion with regard to final authority, must be filed and served so that it is received by counsel for the Debtor (Micheal W. Bishop, Gray Reed & McGraw, P.C., 1601 Elm Street, Suite 4600, Dallas, Texas 75201) and Diverse (Attention: John Akard, Coplen & Banks, P.C., 11111 McCracken, Suite A, Cypress, Texas 77429) not later than three (3) business days before the Final Hearing.**

      Signed this \_\_\_\_ day of April, 2015

 

_____
UNITED STATES BANKRUPTCY JUDGE

**AGREED AS TO FORM:**

*/s/ Micheal W. Bishop*  
Micheal W. Bishop  
State Bar No. 02354860  
Lydia R. Webb  
State Bar No. 24083758  
**GRAY REED & MCGRAW, P.C.**  
1601 Elm Street, Suite 4600  
Dallas, Texas 75201  
Telephone:  (214) 945-4135  
Facsimile:  (214) 953-1332  

Email: mbishop@grayreed.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

*/s/ John Akard, Jr.*  
John Akard, Jr.  
State Bar No. 00790212  
**COPLEN & BANKS, P.C.**  
11111 McCracken, Suite A  
Cypress, TX 77429  
Telephone:  (832) 237-8600  
Email: johnakard@attorney-cpa.com

**COUNSEL FOR THE DIVERSE ENERGY
SYSTEMS, LLC**

# **EXHIBIT 1**

Interim Budget

| Description | 4/20/2015 | 4/27/2015 | 5/4/2015 | Total |
|---|---|---|---|---|
| **Inflow:** | | | | |
| **Revenue from Diverse** | 305,320 | 305,320 | 305,320 | 915,959 |
| | | | | |
| | | | | |
| **Outflow:** | | | | |
| Payroll | 185,000 | | 185,000 | 370,000 |
| 401k | 6,000 | | 4,500 | 10,500 |
| | | | | |
| Rents | - | 69,739 | 3,776 | 73,515 |
| Utilities | 9,650 | 9,550 | - | 19,200 |
| | | | | |
| Materials in Manufacturing | 179,736 | 179,736 | 179,736 | 539,208 |
| Shop Overhead expenses | 14,537 | 14,537 | 14,537 | 43,610 |
| | | | | - |
| Legal fees | | | | - |
| | | | | |
| Bank Fees | 675 | 130 | | 805 |
| | | | | |
| (1) Diverse Management Fee | | | | - |
| | | | | |
| (2) Insurance (Property, Umbrella, etc.) | | | | - |
| | | | | |
| BCBS | | 38,000 | | 38,000 |
| Principal / Cigna | | 9,000 | | 9,000 |
| | | | | |
| **Total Outflows** | 395,597 | 320,691 | 387,548 | 1,103,837 |
| | | | | |
| **Net Cash Flows** | (90,278) | (15,372) | (82,229) | (187,878) |

**(1)** 6/1/15 Management fee payment for May services (paid in arrears). 6/29/15 Management fee payment for June services (paid in arrears). Diverse is waiving the April management fee.
**(2)** Insurance paid by Diverse - amount allocated to ITS using similar methodology as Management fee. Diverse will waive the April charge/allocation.

**<u>EXHIBIT B</u>**

Proposed Final Order to be Supplemented

**EXHIBIT C**

Service List

## LIMITED SERVICE LIST

**Debtor:**
ITS Engineered Services, Inc.
Attention: Todd Haas
6818 FM 2855
Katy, Texas

**U.S. Trustee's Office:**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002

**Debtor's Counsel:**
Micheal W. Bishop
Gray Reed & McGraw, P.C.
1601 Elm Street, Suite 4600
Dallas, TX 75201

**U.S. Attorney's Office:**
US Attorney's Office
1000 Louisiana, Suite 2300
Houston, TX 77002

## Top 20 Unsecured Creditors:

CGSI
916 Fleetwood Place Dr.
Houston, TX 77079

My Pipeline Supply, LLC dba Mps, LLC
Po Box 218844
Houston, TX 77218

Channel Refractory Services Inc.
P.O. Box 1139
Channelview, TX 77530-1139

Osies Inc.
P.O. Box 842152
Houston, TX 77284

Coating Industries, Inc.
6414 Thomas Road
Houston, TX 77041

Ranger Steel Services, LP
P.O. Box 4346 Dept.451
Houston, TX 77210-4346

Dresser Direct
P. O. Box 845074
Dallas, TX 75284-5074

RSD Supply Inc.
P.O. Box 841518
Houston, TX 77284-1518

Eads Distribution, LLC dba the Eads Company
P O Box 732217
Dallas, TX 75373-2217

Spunky Flat Land Company
916 Fleetwood Place Drive
Houston, TX 77079

Forged Components Inc.
14527 Smith Road
Humble, TX 77396

Superior Controls, Inc.
2103 W. Murphy Street
Odessa, TX 79763

Fort Worth F & D Head Co.
Po Box 79700
Saginaw, TX 76179-070

Technipower, Inc.
Po Box 204653
Dallas, TX 75320-4653

Keco Engineered Controls
1200 River Ave., Bldg. 3A
Lakewood, NJ 08701-5657

Texas Gamma Ray, LLC
1127 S Lewis
Tulsa, OK 74104

Mitrowski Welding Equipment, Ltd.
1315 College Avenue
South Houston, TX 77587

Tri-State Supply Company
6206 North Houston Rosslyn
P.O. Box 40512
Houston, TX 77240-0512

Truespec Energy Products
14107 Interdrive West
Houston, TX 77032

Wichita Tank Mfg., Inc.
8321 Seymour Hwy
Wichita Falls, TX 76305

**Attorneys Appearing and Various Other Parties in Interest:**

J. Marcus Hill
Hill & Hill, P.C.
1770 St. James Place, Suite 115
Houston, Texas 77056

Brooke Ulrickson Allen
Brown Dean
306 West 7th Street, Suite 200
Fort Worth, Texas 76102-1505

David M. Sloan
Sloan & Moyer LLP
11767 Katy Fwy Suite 1130
Houston, TX 77079

Icon Bank of Texas, N.A.
7908 N. Sam Houston Parkway W
Suite 100
Houston, TX 77064

Diverse Energy Systems, Inc.
1301 McKinney, Suite 3300
Houston, TX 77010-3047

John Akard, Jr.
Coplen & Banks, P.C.
11111 McCracken, Suite A
Cypress, TX 77429

Texas Comptroller
P.O. Box 149348
Austin, TX 79714-9348

Department of Treasury – IRS
Internal Revenue Service Center
Ogden, UT 84201-0012

Waller County Tax Office
730 9th St.
Hempstead, TX 77445-4534

ADP
One ADP Drive MS-100
Augusta, GA 30909

Alerus Financial
P.O. Box 6001
Grand Forks, ND, 58206

Blue Cross Blue Shield of North Dakota
P.O. Box 6005
Fargo, ND 58108-6005

Cigna Insurance
900 Cottage Grove Road
Bloomfield, CT 06002

Discovery Benefits
3216 13th Ave S
Fargo, ND 58103-3403

Texas Mutual
6210 E. Highway 290
Austin, TX 78723-1098

2615588.1